IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNALILLO COUNTY SHERIFF'S DEPUTY,
HEATHER SCHRECKENDGUST,

    Plaintiff,

v.                                                                             No. CIV 06-148 WPJ/LCS

BERNALILLO COUNTY SHERIFF DARREN WHITE,
in his individual, muncipal, and supervisory capacities,
BERNALILLO COUNTY SHERIFF'S DEPUTY
LARRY HARLIN, in his individual and official
capacities, and BERNALILLO COUNTY SHERIFF'S
DEPUTY KEVIN SHELDHAL, in his individual and
official capacities,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS AS TO FEDERAL CLAIMS
and
DECLINING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed March 29, 2006 **(Doc. 8)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is well-taken in part as to Plaintiff's federal claims, and will be granted on those claims. The motion will be denied as to Plaintiff's state law claims, on the basis that the Court declines supplemental jurisdiction over those claims.

**Background**

Plaintiff is a law enforcement officer at Bernalillo County Sheriff's Department ("BCSD"). She is suing the County's canine handler (Defendant Harlan), lead canine trainer (Defendant Sheldahl), and the Sheriff (Defendant Darren White) of her own department for compensation for

injuries resulting from a canine bite sustained in the line of duty.

Plaintiff alleges Excessive Force under the Fourth Amendment based on "Canine Attack by . . . Transferred Intent of Seizure" (Compl. at 11); a Fourteenth Amendment failure to train claims against Defendant County of Bernalillo;[1] Fourteenth Amendment supervisory liability claims; and state law tort and constitutional claims  The Complaint also alleges a Fourteenth Amendment Substantive Due Process "Danger Creation" claim, which Plaintiff has since abandoned. See, Resp. at 2.

Defendants seek dismissal on the following grounds: (1) the doctrine of transferred intent does not apply to the Plaintiff's claims; (2) Defendants are entitled to qualified immunity; (3) Plaintiff's supervisory and municipal liability claims fail; and (4) exclusivity provisions of the New Mexico Workers' Compensation Act bars Plaintiff's state law claims.  Defendants also argue that the "danger creation" theory does not apply to Plaintiff's Fourteenth Amendment claims.  However, the Court need not address this argument because Plaintiff has abandoned her Fourteenth Amendment claim.[2]

**Legal Standard**

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "[a] complaint should not be

---

[1] Plaintiff has named several individual Defendants in their official capacities.  An official capacity suit is treated as a suit against the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Griess v. Colo., 841 F.2d 1042, 1045 (10th Cir. 1988).

[2] Plaintiff agrees to dismissal of her Fourteenth Amendment substantive due process claim. Resp. at 3.  I agree with Defendants that the claim should be dismissed with prejudice.  The "danger creation" theory applies where a plaintiff is injured by the private violence of a third party who is not a state actor. See, Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006) (danger creation doctrine not applicable to police officer's claim where alleged harmful acts were carried out by fellow officer and not private party).

dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." Curtis Ambulance of Florida, Inc. v. Board of County Comm'n of the County of Shawnee, Kansas, 811 F.2d 1371, 1375 (10th Cir. 1987). When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and construe them in the light most favorable to the plaintiff. Tonkovich v. Kansas Bd. of Regents, University of Kansas, 254 F.3d 941, 943 (10th Cir. 2001).

When raised in a motion to dismiss, a court's review of the qualified immunity defense is limited to the pleadings, and the court must "construe the allegations in the complaint and any reasonable inferences to be drawn from them in favor of [the] plaintiff." Dill v. City of Edmond, 155 F.3d 1193, 1203 (10th Cir.1998). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff "to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988). The threshold inquiry is whether the complaint states a constitutional claim. Siegert v. Gilley, 500 U.S. 226, 231 (1991). A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

**Discussion**

On October 17, 2005, while assisting during a search by the County's Sheriff's Deputies for a criminal suspect, Plaintiff was attacked and bitten on her arm by "Bart," a police dog which was being deployed to find and bite the suspect. Plaintiff describes the incident as follows:

3

> . . . Deputy Schreckendgust was standing perfectly still in a field when canine "Bart" ran up to her, leaped into the air, clamped his teeth into her arm, pulled her to the ground, and began biting and destroying her arm. This uncontrolled aggression would have destroyed Plaintiff's arm, but for her cool, rational decision to shoot and kill the dog. The dog "Bart" died with his jaws still clamped around Plaintiff's arm after Deputy Schreckendgust shot it three times, and his jaws had to be pried off her arm by the handler.

Compl., ¶ 20. "Bart" was unleashed and unmuzzled at the time of the attack. The dog's handler, Defendant Harlan, was not within "command distance" so that specific release commands would have been useless. Plaintiff asserts that BCSD is aware that "Bart" has a history of ignoring commands to release bites. She charges BCSD with inadequate training and for its policies and procedures which have increasingly used canines more as an "an animate force tool, a weapon to bite people[,]" instead of using them to find, guard and bark. Compl., ¶ 23. According to Plaintiff, BCSO has an unwritten custom and policy that "occasional bites of people are the price we pay to catch bad guys," which she alleges violates the constitutions of New Mexico and the United States. Compl. ¶ 16.

In addition to a great deal of pain and suffering from this injury, Plaintiff alleges that she sustained daily pain and permanent nerve damage and scarring from the bite, including loss of feeling to her lower left hand and fifth finger. Plaintiff seeks compensation for injuries beyond medical bills which have already been paid by Workers' Compensation. She alleges that she is bringing this lawsuit to cause departmental evaluation of the role and purpose for police attack dogs, their training, and the need for muzzles for these dogs.

## I.     **Excessive Force Under the Fourth Amendment Claim**

Plaintiff bases her excessive force claim under the Fourth Amendment on the unusual notion that when Defendant Harlan released his canine "Bart," Harlan intended that "Bart" find

and bite the hiding suspect. According to Plaintiff's theory, the bite constitutes a seizure under the Fourth Amendment, and as such, Harlan's purported intention, legally transferred to whomever the dog found and bit – in this case, the Plaintiff. Defendants contend that the doctrine of transferred intent does not apply to Plaintiff's claims.

The Fourth Amendment bars the use of excessive force during the making of an arrest. All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of an individual are analyzed under the Fourth Amendment and its "reasonableness" standard, under Graham v. Connor, 490 U.S. 386, 396 (1989). Thus, the starting point for Plaintiff's claim under this theory is whether a seizure occurred.

A.   Whether Seizure Occurred

A "seizure" occurs only when a citizen is physically touched by law enforcement officers or when she otherwise submits to a show of authority by the officers. Schulz v. Long, 44 F.3d 643, 646 (8th Cir. 1995) (citing Calif. v. Hodari D., 499 U.S. 621, 626 (1991)). An assertion of authority by a law enforcement officer without a corresponding submission by the citizen does not constitute a seizure within the meaning of the Fourth Amendment. Id. One becomes seized when the officer's show of authority has the effect of stopping a citizen's movement. Id. Also, the detention must be willful. Brower v. County of Inyo, 489 U.S. 593, 596 (1989).

Plaintiff believes that because "Bart" was unmuzzled and deployed to find and bite *someone* (Resp. at 4), a seizure occurred. This characterization of a "seizure" does not come within its actual meaning under the Fourth Amendment:

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an

5

>individual's freedom of movement (the fleeing felon), but only when there is a
governmental termination of freedom of movement through means intentionally applied.

County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (citing Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989). The relevant case law does not support Plaintiff's contention that the mere intent to deploy "Bart" to attack *someone* is enough to constitute a seizure of Plaintiff. Rather, the case law indicates that the "means intentionally applied" would have had to be directed toward Plaintiff in order for her to be seized.

In Sacramento, the United States Supreme Court agreed with the lower courts that a Fourth Amendment analysis did not apply where a seizure did not occur. In that case, a high-speed police pursuit resulted in the death of motorcycle passenger, whose parents then sued the county, sheriff's department, and deputy under § 1983. There was no seizure because the suspect, who was driving the motorcycle, was killed when his motorcycle tipped over as he tried to evade the police.

Brower was also § 1983 case where the decedent/plaintiff was killed when the stolen car he was driving at high speeds to elude pursuing police crashed into a police roadblock. The district court agreed with the county that the case should be dismissed because no seizure had occurred, and the Ninth Circuit agreed. However, the Supreme Court concluded that a seizure did occur because the police had intentionally placed a concealed roadblock, and an 18-wheel tractor-trailer to block the suspect's flight in an effort to apprehend him. In explaining that a violation of the Fourth Amendment "requires an intentional acquisition of physical control," Brower, 489 U.S. at 596, the Supreme Court compared two scenarios: the first where a pursuing police car sought to stop a suspect who loses control of his vehicle and subsequently crashes (no

seizure), and the second where a police vehicle pulled alongside a fleeing suspect's car, sideswiped the car and caused the crash (seizure). Whether the termination of the suspect's freedom of movement could be described as a seizure was dependent on whether the means used to effect the seizure was intentional. 489 U.S. at 597.

Defendants offer Bublitz v. Cottey, 327 F.3d 485, 489 (7th Cir. 2003) as an example of how unintended consequences of police actions preclude the existence of a seizure. In Bublitz, police used a "spike belt" (a tire-deflation device) to stop a suspect's flight. A collision occurred between the suspect's vehicle and the vehicle Mr. Bublitz was driving when the suspect lost control of his vehicle when the tires deflated, killing Mr. Bublitz and his wife. The Seventh Circuit determined that the Bublitz family was not "seized" by the police as a result of the crash, because the officers' actions in attempting to stop the suspect -- using a spike belt to flatten the suspect's tires -- were not actions intentionally applied in an attempt to terminate the freedom of movement of the innocent couple. The collision that occurred was an unintended consequence of the officers' attempt to seize the suspect (using the spike belt to flatten the suspect's tires).

In other words, an *accidental* termination of freedom is not a seizure under the Fourth Amendment. Sacramento, 523 U.S. 844 (citing Brower, 489 U.S. at 597) (no seizure where pursuing police car sought to stop suspect by show of authority with flashing lights, but "accidentally stopped the suspect by crashing into him"); Bublitz, 327 F.3d at 489 (officer's action was not the "the means intentionally applied to effect the stop, but was rather an unfortunate and regrettable accident") (citation omitted); cmp., Campbell v. White, 916 F.2d 421, 423 (7th Cir.) (following Brower and finding no seizure occurred where a police officer accidentally struck and killed a fleeing motorcyclist during a high-speed pursuit), cert. denied, 499 U.S. 922 (1991).

7

Thus, for a seizure to have occurred in this case (and thereby a basis for an excessive force claim under the Fourth Amendment), Plaintiff would have to show that Defendant Harlan intended for "Bart" to bite or attack her and that Plaintiff was attacked as a result of that means intentionally applied to *her*-- neither of which Plaintiff is alleging.  The fact that "Bart" bit Plaintiff instead of a suspect can best be described as an accident.  Because an accident is not a seizure, no seizure occurred.  Without a seizure, Plaintiff does not have an excessive force claim under the Fourth Amendment.

B.   Doctrine of Transferred Intent is Not Applicable to Plaintiff's Claims

As if sensing that the usual legal analysis of a seizure would doom her only federal claim, Plaintiff offers a rather unorthodox theory in an effect to circumvent the requirement that Defendants must have intended to terminate *Plaintiff's* freedom of movement – as opposed to that of a fleeing suspect – in order for a seizure to have occurred.  Plaintiff argues that Defendant Harlan's intent to unleash "Bart" to attack a suspect can be transferred to her.  I agree with Defendants that intent cannot be transferred for purposes of a § 1983 claim.  Defendants contend that the doctrine of transferred intent is used almost exclusively in criminal law prosecutions, citing Maes v. Thomas, 46 F.3d 979, 948 n.4 (10th Cir. 1995), but does not apply to § 1983 claims.[3]

Plaintiff extrapolates from certain language in Brower that transferred intent can apply to her Fourth Amendment claim: "[a] seizure occurs even when an unintended person or thing is the

---

[3] The doctrine of transferred intent is defined as follows:  "Under the common-law doctrine of transferred intent, a defendant, who intends to kill one person but instead kills a bystander, is deemed the author for whatever kind of homicide would have been committed had he killed the intended victim." Maes, 46 F.3d at 984 n.4 (citation omitted).

8

object of the detention or taking. . . *but the detention or taking itself must be willful*" (emphasis added). Brower, 489 U.S. at 596 (citing to Hill v. California, 401 U.S. 797, 802-805 (1971) and Maryland v. Garrison, 480 U.S. 79, 85-89 (1987)). While Brower is a § 1983 case, the quoted language does not boost Plaintiff's argument. The two cases cited by Brower, Hill and Maryland, are criminal cases which involved reasonable mistakes in carrying out an arrest and a warrant. One case held that when the police have probable cause to arrest one party, and reasonably mistake a second party for the first party, the arrest of the second party is a valid arrest. In Hill v. California, 401 U.S. 797, 802-805 (1971), the police mistakenly arrested defendant's roommate instead of the defendant. The Supreme Court held that because the police had probable cause to arrest defendant, and because the arrest of the roommate was reasonable under the circumstances, the arrest was valid, and the subsequent search of the premises did not violate the Fourth Amendment. In the other case, Maryland v. Garrison, 480 U.S. 79, 85-89 (1987), the Supreme Court held that a warrant was valid where a search was carried out on the wrong apartment, and where the officers acted on a mistaken but reasonable belief that it was the correct apartment.

 Hill and Maryland are criminal cases, but they knock down Plaintiff's transferred intent theory. In both cases, the police carried out what they intended to do -- even though a reasonable mistake resulted in an "unintended person or thing" becoming the object of the seizure or search. In Hill, the police *intended* to arrest the roommate (even though they mistook the roommate for the defendant); in Maryland, the police *intended* to conduct the search of an apartment (even though it turned out to be the wrong apartment). Thus, even when an "unintended person or thing" is the object of a seizure, the validity of the seizure turns on whether there was an intent to carry it out, although it might turn out to be a reasonable mistake.

9

In the context of the Brower fact pattern, because the officers intended to stop the suspect's flight with a road block and 18-wheel tractor-trailer, the termination of the suspect's freedom of movement was determined to be terminated by means "intentionally applied."  489 U.S. at 597.  The case did not involve an innocent third party or innocent bystander.  I do not find any legal basis on which to read Brower to allow transferred intent for a Fourth Amendment civil rights claim.

Plaintiff alleges that the dog was unleashed to intentionally bite someone, and argues that Defendant Harlan's release of "Bart" without a muzzle, and with an attack command, constituted a willful action by Harlan to complete a seizure.  She argues that the willful action extends to herself as well.  However, the reasoning and holdings in Brower (on which Plaintiff relies), as well as in Hill and Maryland, indicate that without an intent by Harlan to release the dog to attack *Plaintiff*, there is no seizure of Plaintiff.  Nor is there any legally valid way to transfer Harlan's intent to attack someone other than Plaintiff onto Plaintiff herself.

Liability under § 1983 must be predicated upon a violation of a plaintiff's personal rights, and not the rights of someone else.  Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir.1990).  In the context of a § 1983 case, the transferred intent doctrine does not apply.  See, e.g. Koon v. Dyson, unpubl. opin., 2004 WL 3217870, *4 (D.S.C. 2004) (where correctional officer, in an attempt to restore order or compliance, sprays pepper spray into one inmate's cell and another inmate is inadvertently exposed to the spray, the second inmate does not have a claim for an Eighth Amendment violation based on excessive force); McNutt v. Archer, unpubl. opin., 1993 WL 372207, *3 n.2 (N.D.Ill. 1993) (when a correctional officer intents to shoot one inmate and inadvertently hits another, there is no Eighth Amendment violation); Bolden v. O'Leary, unpubl.

opin. 1995 WL 340961 *3 (N.D.Ill. 1995 *3) ("There is no transferred intent under Section 1983").

Plaintiff admits that the dog's attack was not meant for her. Therefore, Defendant Harlan's intent to have "Bart" find and bite the hiding suspect does not transfer to Plaintiff's person to become Plaintiff's § 1983 claim. Having failed on her transferred intent argument, Plaintiff is left without a Fourth Amendment claim.

## II.     Qualified Immunity

Plaintiff's federal claims turns on a sole legal question: whether Plaintiff has alleged a violation of a constitutional right.  Plaintiff's excessive force claim under the Fourth Amendment requires the existence of a seizure. In the foregoing discussion, I have found that Plaintiff was not "seized" within the meaning of the Fourth Amendment. I also determined that Plaintiff cannot sustain a § 1983 claim based on an intent to have "Bart" attack, or seize, another individual. As a result, Plaintiff has not met the threshold requirement in a qualified immunity analysis – the assertion of a constitutional claim.

There is no need to proceed to the "clearly established" question in the analysis. See, Sacramento, 523 U.S. at 841 n.5 ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question").

## III.    Municipal and Supervisory Liability Claims

Plaintiff's remaining federal claims are premised on municipal and supervisory liability. These claims hinge on a finding that the complaint alleges the violation of a constitutional right.

My determination that Plaintiff has not alleged a Fourth Amendment claim bars these claims as well.  See, Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir. 1990) (a municipality may not be held liable where there is no underlying constitutional violation by any of its officers (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)); Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) (where an individual law enforcement officer is entitled to qualified immunity on the ground that his or her conduct did not violate the law, it is proper to dismiss claims against the municipality); Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993) (liability of supervisor based on showing that the defendant-supervisor personally directed the violation or had actual knowledge of the *violation* and acquiesced in its continuance) (emphasis added).

### IV.    Whether Plaintiff's State Law Claims are Barred

Defendants argue that the exclusivity provisions of the New Mexico Workers' Compensation Act bars Plaintiff's state law claims, relying on Delgado v. Phelps Dodge Chino, Inc., 131 N.M. 272 (2001) (injured worker could bring cause of action directly against employer if employer intentionally inflicted or willfully caused the employee to sustain an injury).  Plaintiff contends that the issue is not appropriate for consideration for dismissal at this stage, but requires discovery and jury resolution.

I decline to exercise supplemental jurisdiction over Plaintiff's state claims, pursuant to 28 U.S.C. § 1367(c)(3).  Thatcher Enterprises v. Cache Cty. Corp., 902 F.2d 1472 (10th Cir. 1990) (when federal claim dismissed before trial, even though not insubstantial in the jurisdictional sense, the state law claim will generally be dismissed as well).

**Conclusion**

A claim of excessive force under the Fourth Amendment is analyzed in the context of a seizure. However, I conclude that Plaintiff was not "seized" within the meaning of the Fourth Amendment. I also find that the doctrine of "transferred intent" does not apply to § 1983 claims. Thus, the complaint does not allege a Fourth Amendment claim of excessive force. Defendants are granted qualified immunity on the basis that Plaintiff has not met the threshold requirement of alleging a constitutional claim.

Plaintiff has abandoned her Fourteenth Amendment substantive due process claim, which will be dismissed with prejudice.

Plaintiff's municipal and supervisory liability claims will also be dismissed because Plaintiff has failed to allege the violation of a constitutional right.

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss **(Doc. 8)** is hereby GRANTED on Plaintiff's Fourth Amendment Excessive Force Claim, which is DISMISSED WITH PREJUDICE, as described above;

**IT IS FURTHER ORDERED** that the motion is GRANTED on Plaintiff's Fourteenth Amendment claim, which Plaintiff has agreed to abandon, and which is DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that the motion is GRANTED as to Plaintiff's § 1983 municipal and supervisory liability claims for reasons described above, and which are

DISMISSED WITH PREJUDICE;

**IT IS FINALLY ORDERED** that, consistent with the above findings, all of Plaintiff's federal law claims are hereby DISMISSED WITH PREJUDICE, and the Court DECLINES to exercise supplemental jurisdiction over Plaintiff's state law claims.

_____
UNITED STATES DISTRICT JUDGE